```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```
_____

MARY V. CLARK,

                  Plaintiff,

    -vs-                             **No. 1:13-CV-01124 (MAT)**
                                         **DECISION AND ORDER**
CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.
_____

## I.  Introduction

Represented by counsel, Mary V. Clark ("plaintiff") brings this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the reasons discussed below, the Commissioner's motion is granted.

## II.  Procedural History

The record reveals that in March 2011, plaintiff (d/o/b January 13, 1960) applied for DIB, alleging disability as of October 2010. After her application was denied, plaintiff requested a hearing, which was held before administrative law judge Robert T. Harvey ("the ALJ") on May 30, 2012. The ALJ issued an unfavorable

decision on June 21, 2012. The Appeals Council denied review of that decision and this timely action followed.

**III. Summary of the Record**

Treatment notes for the relevant time period from plaintiff's rheumatologist, Dr. Ralph Argen, noted synovitis[1] of the metacarpophalangeal joints bilaterally, occasional positive Tinel's sign[2] in the left wrist, occasional synovitis of the wrists and ankles, tenderness in the shoulders and ankles, and mild synovitis in the knees. Dr. Argen diagnosed plaintiff with rheumatoid arthritis. X-rays of plaintiff's right knee and right hand revealed no abnormalities. Treatment notes for the relevant time period from plaintiff's primary care physician, Dr. Shawn Cotton, indicate that he consistently diagnosed plaintiff with back pain and "mild" depression. He prescribed various medications for pain and anxiety. Physical examinations were consistently unremarkable with the exception of obesity and reported back pain.

For four days in April 2010 (approximately six months prior to plaintiff's alleged onset date), plaintiff was voluntarily admitted to Buffalo General Hospital after an attempted overdose. Plaintiff reported that she had "tried to take an overdoes of Lortab, but could not swallow it and instead of that, she took some liquid

---

[1] Synovitis is the medical term for inflammation of the synovial membrane. This membrane lines joints which possess cavities, known as synovial joints.

[2] A positive Tinel's sign indicates an irritated nerve. Tinel's sign is positive when lightly banging (percussing) over the nerve elicits a sensation of tingling, or 'pins and needles,' in the distribution of the nerve.

2

Benadryl to calm herself." T. 266. Plaintiff reported that she treated for depression with her primary care physician. After medication adjustment, her condition improved. Her global assessment of functioning ("GAF") score was noted to be 35 on admission and 55 to 60 on discharge.[3] On April 16, 2010, counselor Kathleen McAndrew at Buffalo General completed a "life skills assessment" and found that plaintiff had "good" functioning in all listed areas of daily activities and social functioning, except that she had only "fair" functioning in ability to pay bills and shop for food, family/friend support, and special interests or hobbies. T. 293-94. She was not assessed to have "poor" functioning in any listed areas.

After that hospitalization, plaintiff was referred to Hamburg Counseling Service. In a letter dated April 27, 2011, social worker David Isbell reported that she "came three times and dropped out of treatment." T. 314. Treatment notes from Hamburg Counseling indicate that plaintiff complained of sleep/appetite disturbance, depressive symptoms, "somatic complaints," and "communication problems," but no mental status examination findings were recorded. T. 316.

In an opinion dated May 13, 2011, Dr. Cotton stated that plaintiff suffered from rheumatoid arthritis, chronic pain syndrome, depression, myalgia, sleep apnea, GERD, vitamin

---

[3] See generally American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), at 34 (4th ed. rev. 2000) (describing global assessment of functioning ("GAF") scoring).

deficiency, thoracic disc degeneration, ulcerative colitis, hypertension, cervical disc degeneration, and anxiety. Dr. Cotton did not, however, provide an assessment of plaintiff's functional limitations. Rather, Dr. Cotton deferred to plaintiff's rheumatologist, Dr. Ralph Argen, for physical limitations, and plaintiff's treating counselor at Hamburg Counseling Service for mental health limitations. Although Dr. Cotton's opinion attached various documents, none of these documents included functional assessments.

In May 2011, consulting psychologist Dr. Gregory Fabiano performed a psychiatric examination at the request of the state agency. Plaintiff reported that she ceased treatment at Hamburg Counseling Services because "she preferred psychiatric treatment rather than psychological treatment." T. 376. Mental status examination revealed a depressed affect but was otherwise unremarkable. Dr. Fabiano opined that plaintiff could perform both simple and complex tasks, make appropriate decisions, relate adequately to others, and appropriately deal with stress. Dr. Fabiano stated that plaintiff's psychiatric symptoms did "not appear to be significant enough to interfere with [her] ability to function on a daily basis." T. 379. Consulting psychologist T. Andrews, who reviewed plaintiff's record, opined that she had mild limitations in social functioning, activities of daily living, and maintaining concentration, persistence, or pace.

4

Also in May 2011, Dr. Sandra Boehlert completed a consulting internal medicine examination at the request of the state agency. Dr. Boehlert recorded a normal physical examination, except for "mild diffuse tenderness" of the abdomen. Dr. Boehlert opined that plaintiff "require[d] frequent access to [a] bathroom." T. 384.

Dr. Cotton provided another opinion, dated May 2012, in which he opined that plaintiff could lift and/or carry 10 pounds occasionally and could not lift anything with frequency; could stand and/or walk for less than two hours per day; and could sit for no more than three hours per day. Dr. Cotton also opined that plaintiff had "poor" to "no" functioning in the following mental health areas: maintaining attention for extended periods of two-hour segments, maintaining regular attendance and being punctual within customary tolerances; completing a normal workday or week without interruptions from psychologically-based symptoms; and performing at a consistent pace without an unreasonable number and length of rest periods. T. 464-65.

### IV. The ALJ's Decision

Initially, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2015. At step one of the five-step sequential evaluation, see 20 C.F.R. § 404.1520, the ALJ determined that plaintiff had not engaged in substantial gainful activity since October 23, 2010, the alleged onset date. At step two, the ALJ found that plaintiff suffered from the following severe impairments: rheumatoid arthritis, colitis,

5

synovitis, hypertension, cerebral microvascular disease, headaches, and fatigue. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any listed impairment.

Before proceeding to step four, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b) in that she could not work around unprotected heights; operate heavy, moving, or dangerous machinery; climb ropes, ladders, or scaffolds; or work in areas where she would be exposed to cold or significant barometric changes. The ALJ found that plaintiff had occasional limitations in bending, climbing, stooping, squatting, kneeling, balancing, crawling, and handling, pushing, or pulling with the upper extremities.

At step four, the ALJ found that plaintiff was capable of performing past relevant work as a "beauty shop manager." T. 32. Accordingly, the ALJ did not proceed to step five and determined that plaintiff was not disabled.

**V.  Discussion**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). "Substantial evidence means 'such relevant evidence as a reasonable

6

mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000).

### A.   Step Four Finding

Plaintiff contends that the ALJ erroneously determined, at step four, that she was capable of performing her past relevant work as a beauty shop manager. At step four, the ALJ was required to consider whether plaintiff retained the RFC to perform her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). In order to survive step four, "the claimant has the burden to show an inability to return to her previous specific job and an inability to perform her past relevant work generally. This inquiry requires separate evaluations of the previous specific job and the job as it is generally performed." Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003) (citations omitted). The Dictionary of Occupational Titles ("DOT") is used to describe jobs "as they are generally performed," Jasinski, 341 F.3d at 185, and the Commissioner is permitted to take administrative notice of the DOT. See 20 C.F.R. § 404.1566(d)(1), 416.956(d)(1); see also Petrie v. Astrue, 412 F. App'x 401, 409-10 (2d Cir. 2011).

In this case, plaintiff reported that from 1990-2000, she worked as a hairdresser but also managed and supervised the beauty shop where she worked. She reported that she supervised four employees and that 80 percent of her day was spent in a supervisory capacity. Her job duties included "advertis[ing], book work evaluations, training, hair cutting, coloring, styling, artificial nails, ordering supplies, [and] schedul[ing]." T. 190. At

7

plaintiff's hearing, the vocational expert ("VE") determined that plaintiff had performed the jobs of hairdresser and beauty shop manager, both of which are listed in the DOT. The VE testified that the DOT considers the job of beauty shop manager to be light, skilled work. The VE testified that an individual with the RFC found by the ALJ would be able to perform past relevant work as a beauty shop manager – not as plaintiff actually performed the work, but as that work is performed in the national economy.

In his decision, the ALJ found that plaintiff could perform her past relevant work as a beauty shop manager, as that work is generally performed in the national economy. Although the ALJ's finding at step four did not include a specific function-by-function assessment, it reflected proper application of the relevant legal principles and was based on substantial evidence. See Cichocki v. Astrue, 729 F.3d 172, 174 (2d Cir. 2013). The ALJ's RFC finding is consistent with the ability to perform light, skilled work, such as the job of beauty shop manager. The ALJ was within his discretion to credit the vocational expert's testimony that an individual with plaintiff's RFC could perform the job of beauty shop manager as generally performed in the national economy. The ALJ's reasoning, which was supported by the VE's testimony, provides the Court with "an adequate basis for meaningful judicial review," and as such, remand is not required. See Cichocki, 729 F.3d at 174.

Plaintiff argues that her past relevant work as a hairdresser and beauty shop manager was actually a "composite job" and

8

therefore the ALJ erred in determining that she could perform some, but not all, functions of her past relevant work. This argument fails for two reasons. First, plaintiff's past relevant work was classified by the VE as *both* a hairdresser *and* a beauty shop manager. Each of these positions has its own job description in the DOT. SSR 82-61 states that "composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT." Where, as here, a VE testifies that both jobs are individually listed in the DOT, "they are not composite jobs." Johnson v. Colvin, 2014 WL 1394365, *7 (W.D.N.Y. Apr. 9, 2014). Second, the VE testified that, given the RFC found by the ALJ, plaintiff could perform *all* of the functions of the job of beauty shop manager, as generally performed in the national economy. Therefore, the case law cited by plaintiff, see doc. 4-1 at 24, is irrelevant.

### B.  Weight Given to Medical Opinions

Plaintiff contends that the ALJ failed to properly weigh the May 2012 opinion of treating physician Dr. Shawn Cotton and the consulting opinion of Dr. Sandra Boehlert. The ALJ gave little weight to Dr. Cotton's opinion as to plaintiff's physical limitations, finding that it was inconsistent with his own treatment notes and other substantial evidence of record. The record reveals that Dr. Cotton's own treatment notes recorded essentially normal physical and mental status examinations. See, e.g., 468, 471, 476, 479, 495-96, 499-50 (noting no abnormalities on physical examination); 470, 475, 478, 494, 498 (assessing

9

plaintiff with "minimal" or "mild" depression). Other substantial evidence of record failed to support Dr. Cotton's restrictive physical opinion; although Dr. Argen, plaintiff's rheumatologist, noted joint pain, he consistently noted otherwise unremarkable physical examinations. Dr. Argen's most recent treatment note indicated that plaintiff was doing well on a new arthritis medication, Cimzia, and she reported that she was "doing great." T. 423. Plaintiff also reported that she was "back to work," was "able to handle the job," and was working "8 [hours] a day, 7 days a week and [was] doing well up until [that] point." Id. She also reported "about 5 bowel movements daily that [were] more controlled." Id.

Regarding mental health symptoms, although the record does reflect a hospitalization for a "possible overdose" in April 2010, Dr. Cotton's more recent treatment notes indicated that plaintiff's depression was mild. Plaintiff ceased treatment with Hamburg Counseling Services after only three visits, indicating that she wished to be treated with medication prescribed by Dr. Cotton rather than pursue psychological counseling to address her issues. Moreover, consulting psychologist Dr. Fabiano found that plaintiff had no significant limitations stemming from mental health impairments, and plaintiff's functioning was assessed to be fair to good upon discharge from Buffalo General in April 2010.

The Court thus concludes that the ALJ gave good reasons for rejecting Dr. Cotton's restrictive May 2012 opinion. As the ALJ found, Dr. Cotton's opinion was inconsistent with the findings of

10

his own treatment notes as well as with the findings of other treating and consulting sources. Therefore, the ALJ was within his discretion to decline to give controlling weight to Dr. Cotton's opinion. See, e.g., Rivera v. Colvin, 2015 WL 6142860, *4 (W.D.N.Y. Oct. 19, 2015) ("Because [the treating physician's] own treatment notes, as well as notes from other treating sources, contain substantial evidence of objective findings inconsistent with the limitations found by [the treating physician] in his . . . opinion, the ALJ was entitled to give that opinion less than controlling weight."); Kirk v. Colvin, 2014 WL 2214138, *7 (W.D.N.Y. May 28, 2014) ("Inconsistencies between [the treating physician's] treatment notes and final opinions constitute 'good reasons' for assigning her opinions non-controlling weight.") (citing Campbell v. Astrue, 2013 WL 1221931, *2 (W.D.N.Y. June 29, 2013) (stating an ALJ may "properly discount" a treating physician's opinion if it is inconsistent with "[her] own treatment notes")).

Plaintiff argues that the ALJ erred in giving little weight to the consulting opinion of Dr. Boehlert, specifically with regard to Dr. Boehlert's opinion that plaintiff would require frequent bathroom breaks. The ALJ found that this opinion was "inconsistent with the examination findings and there [was] no other evidence of the need for frequent breaks to use the restroom." T. 31. Although the record does contain evidence that plaintiff often reported increased bowel movements, Dr. Cotton, whose May 2012 opinion was quite restrictive, did not delineate any limitations in this regard. Plaintiff saw a gastroenterologist, Dr. Tuoti, only once

11

during the relevant time period. Dr. Tuoti prescribed medication which he noted "helped to reduce the frequency and form [of] the stool." T. 436. The Court thus concludes that substantial evidence supported the ALJ's decision to reject Dr. Boehlert's consulting opinion as to plaintiff's need for frequent bathroom breaks. See, e.g., Viteritti v. Colvin, 2016 WL 4385917, *11 (E.D.N.Y. Aug. 17, 2016) ("[A]n ALJ may credit those portions of a consultative examiner's opinion which the ALJ finds supported by substantial evidence of record and reject portions which are not so supported.").

### C.  Step Two Finding Regarding Mental Impairments

Finally, plaintiff contends that the ALJ erred in finding, at step two, that her mental health impairments were nonsevere. Generally, "an error in an ALJ's severity assessment with regard to a given impairment is harmless . . . when it is clear that the ALJ considered the claimant's [impairments] and their effect on his or her ability to work during the balance of the sequential evaluation process." Diakogiannis v. Astrue, 975 F. Supp. 2d 299, 311-12 (W.D.N.Y. 2013) (internal quotation marks and citations omitted). Here, although the record establishes that plaintiff suffered from mild depression, the ALJ's decision indicates that he fully reviewed all of the record evidence regarding plaintiff's mental health impairments. Significantly, as found above, Dr. Cotton's restrictive opinion as to plaintiff's mental health limitations was unsupported by substantial evidence in the record. Additionally, Dr. Fabiano's consulting psychiatric evaluation assessed no

significant mental limitations. The ALJ was entitled to give significant weight to Dr. Fabiano's opinion, as it was consistent with the other substantial record evidence. See, Petrie v. Astrue, 412 F. App'x 401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute . . . substantial evidence.") (citing Mongeur v. Heckler, 722 F.2d 1033, 1039 (2d Cir. 1983) (per curiam)). Because the ALJ's decision indicates that he fully considered plaintiff's mental health impairments in the balance of the sequential evaluation process, any error at step two with regard to mental impairments was harmless. See Diakogiannis, 975 F. Supp. 2d at 311-12.

## VI. Conclusion

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Doc. 4) is denied and the Commissioner's motion (Doc. 7) is granted. The ALJ's finding that plaintiff was not disabled is supported by substantial evidence in the record, and accordingly, the Complaint is dismissed in its entirety with prejudice. The Clerk of the Court is directed to close this case.

**ALL OF THE ABOVE IS SO ORDERED.**

**S/Michael A. Telesca**
HON. MICHAEL A. TELESCA
United States District Judge

Dated:   September 13, 2016
         Rochester, New York.